993 F.2d 1549
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Charles M. FRANKLIN, Petitioner/Appellant,
v.
Charles ADKINS and Indiana Attorney General, Respondents/Appellees.
 No. 92-1765.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 29, 1993.*
Decided May 25, 1993.
Rehearing and Rehearing En Banc
Denied July 27, 1993.
 
 Before CUMMINGS, CUDAHY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Charles Franklin filed a petition for a writ of habeas corpus, 28 U.S.C. § 2254, claiming that (1) he was denied due process of law because the evidence presented at his trial was insufficient to sustain his convictions for murder and conspiracy to commit murder, and (2) he was denied his right under the Sixth Amendment to be confronted with the witnesses against him and his right under the Due Process Clause of the Fourteenth Amendment to receive a fair trial when the trial court allowed the prosecution to introduce evidence that Franklin's co-conspirator had been convicted of conspiring to commit murder. The district court denied Franklin's petition and we affirm.
 
 I.
 
 2
 On the morning of February 16, 1986, the body of Jackson Jay Bell was discovered in his home. The cause of death was a wound inflicted by a shotgun blast to the right chest and heart. The shotgun had been fired through a kitchen window. Franklin lived in an adjoining house and had been involved in a long-running affair with Betty Sue Bell, the victim's wife. Betty Sue and Franklin were arrested and charged with conspiring to commit murder, and Franklin was also charged with murder. Betty Sue was tried and convicted by a jury before Franklin's trial began.
 
 
 3
 A jury convicted Franklin of both murder and conspiring to commit murder, but the convictions were reversed by the Supreme Court of Indiana in Franklin v. State, 533 N.E.2d 1195 (Ind.1989). A second jury trial was commenced and a jury again convicted Franklin of both offenses. Franklin was sentenced to concurrent terms of fifty years in prison. The Indiana Court of Appeals affirmed Franklin's convictions and the Supreme Court of Indiana denied transfer. Franklin subsequently filed with the district court a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that the evidence was insufficient to sustain his convictions, and that he had been denied his right to be confronted with the witnesses against him and his right to a fair trial when the district court permitted the prosecution to introduce evidence that Betty Sue had been convicted of conspiring to commit murder. The district court denied Franklin's petition for writ of habeas corpus, and Franklin appeals.
 
 II.
 
 4
 The scope of our review of Franklin's petition for writ of habeas corpus is limited to determining whether Franklin's custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254; Estelle v. McGuire, 112 S.Ct. 475, 480 (1991). Franklin maintains that the evidence presented at his trial was insufficient to sustain his convictions for murder and conspiracy to commit murder. This is a federal Constitutional claim and therefore is within the scope of our review. Jackson v. Virginia, 443 U.S. 307, 321 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.
 
 
 5
 Franklin contends that because the state did not present direct evidence that he fired the shot that killed the victim or that he reached an agreement with Betty Sue to murder the victim, a rational jury could not have found him guilty of both conspiracy to commit murder and murder. At trial the state presented evidence that the individual who committed the murder left footprints in the snow outside the kitchen window of the victim's house as he waited for an opportunity to shoot the victim. Franklin argues that because the state did not empirically prove that the footprints were his, a rational jury could not have concluded that he was at the scene of the murder when the murder took place. He argues that the data from the autopsy report and the evidence gathered by investigators at the scene of the murder disprove the state's theory that Franklin shot the victim through a window while the victim was seated in his kitchen. Franklin also argues that the transcript of a tape recording that was made of Betty Sue's telephone call to the police immediately after the murder supports his theory that the victim was shot by someone upstairs and was subsequently carried downstairs to the kitchen. Finally, Franklin maintains that a rational jury would not have inferred that he and Betty Sue conspired to murder the victim but only that the two knew each other and had a friendly relationship.
 
 
 6
 Nevertheless, after viewing the evidence in the light most favorable to the state, we must conclude that a rational trier of fact could have found Franklin guilty of conspiracy to commit murder and murder. The state did not need to present direct evidence that Franklin committed the offenses to prove his guilt beyond a reasonable doubt. Franklin's selective discussion of the evidence ignores strong circumstantial evidence that supports the jury's verdict. Circumstantial evidence is every bit as probative as direct evidence. United States v. McNeill, 887 F.2d 448, 450 (3d Cir.1989), cert. denied, 493 U.S. 1987 (1990). Franklin's convictions may be supported by circumstantial evidence alone, United States v. Durrive, 902 F.2d 1221, 1225 (7th Cir.1990), so long as there exists a logical and convicing connection between the established facts and the conclusion inferred. United States v. Grandinetti, 891 F.2d 1302, 1306-07 (7th Cir.1989), cert. denied, 494 U.S. 1060 (1990). A rational jury could have inferred from the facts established at Franklin's trial that Franklin conspired with Betty Sue to murder the victim and that he did, in fact, commit the murder. Franklin had a long-running affair with Betty Sue. He was present on the night of the murder and he owned a shotgun of the type that was used to shoot the victim. Franklin gave the shotgun to a friend several weeks after the murder and remarked that the police were looking for it. While he was incarcerated before his trial, Franklin related to two fellow inmates that he had killed the victim by donning gloves and shooting him through the kitchen window with a shotgun, and that in 1985 he had planted a bomb in the victim's truck, but the bomb did not explode. Franklin's ex-wife had seen the bomb sitting on a table several weeks before the bombing attempt. Franklin further told the inmates that the victim's wife had helped him commit the murder.
 
 
 7
 In light of this strong circumstantial evidence in support of the jury's verdict, it is clear to us that Franklin has failed to show that a rational jury could not have found him guilty beyond a reasonable doubt. We therefore conclude that the evidence was sufficient to support Franklin's convictions.
 
 II.
 
 8
 Franklin also contends that he was deprived of his constitutional right to be confronted with the witnesses against him when the district court permitted the state to elicit testimony from one of its witnesses revealing that Betty Sue had been convicted of conspiring to commit murder. The Sixth Amendment provides in part that: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." Franklin relies on Kirby v. United States, 174 U.S. 47 (1899), a case in which the Supreme Court applied the Confrontation Clause to restrict a prosecutor's use of third-party convictions and guilty pleas. Kirby involved a prosecution for receipt of property stolen from the United States. At Kirby's trial the government's sole proof of the fact that the property had been stolen from the United States consisted of the prior guilty pleas of three of the thieves and the conviction after a trial of a fourth. The government simply produced the record of the conviction and the guilty pleas to prove that the property that Kirby received had been stolen from the United States. The Court reversed Kirby's conviction, holding that he had not been "within the meaning of the constitution, confronted with the witnesses against him." Id. at 60. The violation of the Confrontation Clause resulted not from the government's failure to confront Kirby with the four thieves who had pleaded guilty or had been convicted, but rather from the government's failure to confront Kirby with those who had been witnesses against the thieves. The Court saw the effect of the government's use of the record of the conviction and guilty pleas as allowing the government to use the testimony of those who had been witnesses against the thieves to prove facts incriminating to Kirby while not allowing Kirby an opportunity to challenge and cross-examine the witnesses. Id. at 61.
 
 
 9
 Franklin submits that in this case, as in Kirby, the prosecution violated the Confrontation Clause by using the prior conviction of a third person (Betty Sue) as substantive evidence to prove a fact essential to sustain a conviction in a subsequent case. The state elicited testimony from one of its witnesses, Detective Robert Green, revealing that Betty Sue had been arrested for, and convicted of, conspiring to murder her husband. Franklin argues that the effect of this testimony was to allow the state to establish that Franklin agreed with Betty Sue to commit murder since the jury knew from the charges against Franklin that Betty Sue was the alleged co-conspirator. This, Franklin concludes, violated his right of confrontation, for he was not a party in the case against Betty Sue and therefore had not been able to cross-examine the witnesses who testified at Betty Sue's trial.
 
 
 10
 Franklin's contention has merit. The state was able to use Betty Sue's conviction for conspiracy to commit murder as substantive evidence that Franklin was Betty Sue's co-conspirator. Just as Kirby could not have been convicted of receiving stolen property unless it was established that the property he received was stolen, id. at 52, Franklin could not have been convicted of conspiring to murder the victim unless it was established that he had a co-conspirator. The jury was aware that Betty Sue was Franklin's alleged co-conspirator. The information that was filed against Franklin and read to the jury stated that Franklin was accused of agreeing with Betty Sue to murder the victim. And the trial court instructed the jury that in order to find Franklin guilty of conspiracy to commit murder, it would have to find that Franklin agreed with Betty Sue to kill the victim. The jury heard Detective Green testify that Betty Sue was arrested for and charged with conspiracy to commit murder shortly before Franklin was arrested, and that Betty Sue was ultimately convicted of conspiring to murder her husband. The confluence of this information was potentially harmful to Franklin's defense. The jury was aware that the alleged conspiracy was between Betty Sue and Franklin and that Betty Sue had already been found guilty of conspiracy. If the jury assumed that the conviction of Betty Sue was correct, it might have inferred that Franklin was guilty of conspiring with Betty Sue. The Confrontation Clause is intended to prevent juries from inferring guilt on the basis of evidence against persons other than the accused. Tennessee v. Street, 471 U.S. 409, 414 (1986); Douglas v. Alabama, 380 U.S. 415, 419 (1965); Namet v. United States, 373 U.S. 179, 187 (1963). The simplest solution would have been for Franklin's attorney to request and for the court to give a limiting instruction that would have restricted the jury's consideration of Betty Sue's conviction. But no such request was made, and the judge did not initiate that instruction on his own.
 
 
 11
 Indeed, had the trial court instructed the jury that it could consider Detective Green's testimony about Betty Sue's arrest and conviction only to evaluate Franklin's defense that the police did not aggressively investigate Betty Sue's role in the crime, introduction of the evidence probably would not have violated the Confrontation Clause. As a general rule, we will rely on the "crucial assumption" that the jurors will follow the instructions given to them by the trial court. Parker v. Randolph, 442 U.S. 62, 73 (1979). Jury instructions are not enough to prevent a violation of the Confrontation Clause only where the introduction of a co-conspirator's conviction or confession is "devastating" to the defendant's case. Cruz v. New York, 481 U.S. 186, 190-91 (1987); Bruton v. United States, 391 U.S. 123, 135-36 (1968). The evidence against Franklin was substantial. Also, the only time that the jury was asked to consider Betty Sue's conviction was immediately after Franklin raised the proposition that the police were protecting Betty Sue. Introduction of the conviction on re-direct was no more than a response to Franklin's attempt to shift the focus to a police cover-up. Under these circumstances mere mention of the conviction could not be considered "devastating" to Franklin's case. Thus, a jury instruction limiting the jury's consideration of the conviction would have avoided a clash with the Confrontation Clause.
 
 
 12
 We cannot accept the state's suggestion that the Confrontation Clause is not relevant to this case because Betty Sue did not testify and therefore was not a witness against Franklin. The jury's verdict that Betty Sue was guilty was hearsay, as it was an out-of-court statement offered to prove the truth of the matter asserted, Fed.R.Evid. 801; United States v. Vandetti, 623 F.2d 1144, 1148 (6th Cir.1980), that Betty Sue had been convicted of conspiring to murder her husband. Because Franklin could not challenge the conviction by cross-examining the witnesses at Betty Sue's trial, the Confrontation Clause was implicated. Street, 471 U.S. at 413-14. The fact that the state introduced the fact of Betty Sue's conviction in order to rebut Franklin's theory that the police were protecting Betty Sue is of no consequence. The state could have effectively rebutted this theory by introducing evidence that the police had conducted an investigation into Betty Sue's involvement in the murder and had, in fact, arrested her. Introducing evidence that Betty Sue was convicted of conspiring to commit murder probably went a step too far, even with Franklin's claim of police deception. Moreover, we fail to see how evidence of Betty Sue's conviction would rebut Franklin's theory that Betty Sue conspired with someone other than Franklin. Franklin could not challenge the out-of-court statement that Betty Sue conspired with someone else to kill her husband even though that was one of Franklin's fall-back theories. We find no meaningful distinction between this scenario and the one in Kirby where the Court found that the defendant's inability to challenge the out-of-court statement that the property in issue was stolen was a violation of the Confrontation Clause. 147 U.S. at 60-61. Franklin had a right to have the question whether he conspired with Betty Sue to murder the victim determined by the evidence presented against him, not by what was proved in the criminal prosecution of Betty Sue. See Turner v. Louisiana, 379 U.S. 466, 472-73 (1965); Bisaccia v. Attorney Gen., 623 F.2d 307, 312 (3d Cir.), cert. denied, 449 U.S. 1042 (1980); United States v. Toner, 173 F.2d 140, 142 (3d Cir.1949). We therefore conclude that the introduction of Betty Sue's conviction technically implicated and violated the Confrontation Clause.
 
 
 13
 Having said this much, we now must consider whether Franklin is entitled to habeas corpus relief. We hold that he is not. Not every constitutional error automatically requires reversal of a conviction. Arizona v. Fulminante, 111 S.Ct. 1246, 1263 (1991). The Constitution entitles a criminal defendant to a fair trial, not a perfect one. Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). Constitutional errors that may be characterized as "trial errors," errors that occurred during the presentation of the case to the jury, and that therefore may be quantitatively assessed in the context of the aggregate of the evidence that was presented, may be treated as harmless. Chapman v. California, 386 U.S. 18, 21 (1967). The introduction into evidence of Betty Sue's conviction in violation of the Confrontation Clause was a trial error and, as such, is subject to harmless-error analysis. See Schneble v. Florida, 405 U.S. 427, 429 (1972); Harrington v. California, 395 U.S. 250, 251-52 (1969); see also Van Arsdall, 475 U.S. at 682 ("[T]he denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case.").
 
 
 14
 Because Franklin's claim comes to us in the context of a petition for writ of habeas corpus, and not on direct review, we do not apply the harmless-error standard set forth in Chapman v. California, 386 U.S. 18, 24 (1967), whether the constitutional error was harmless beyond a reasonable doubt. Brecht v. Abrahamson, 61 U.S.L.W. 4335, 4339-40 (U.S. Apr. 21, 1993). Overturning final and presumptively correct convictions on collateral review because the state cannot prove that the error is harmless under the Chapman standard undermines the state's interest in finality and infringes upon its sovereignty over criminal matters. Id. at 4340. We therefore will find the trial court's error in allowing the state to introduce into evidence Betty Sue's conviction was harmless unless the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " Id. at 4337 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Under this standard, a showing that there is a reasonable probability that the error contributed to the jury's verdict is not enough to warrant reversal of Franklin's convictions. Id. at 4340. Franklin must establish that the error resulted in "actual prejudice." Id.
 
 
 15
 We conclude that allowing the state to introduce evidence of Betty Sue's conviction was harmless error. In light of the record as a whole, the evidence of Betty Sue's conviction did not prejudice the jury's verdict. The trial transcript in this case was nearly nine-hundred pages long. Betty Sue's conviction was mentioned only briefly on the second day of the three-day trial, and it was mentioned on the state's redirect examination of Detective Green, immediately after Franklin, on cross-examination, had suggested that the police had not vigorously pursued the case against Betty Sue. The state did not argue that Betty Sue's conviction was evidence of Franklin's guilt. Nor did the state inform the jury that Betty Sue was convicted of conspiring with Franklin and not someone else. This is significant because one of Franklin's theories at trial was that Betty Sue had conspired with someone else to kill her husband. Moreover, as discussed above, the evidence against Franklin was weighty. Franklin related to two inmates, who were not informants for the state, that he had killed the victim with Betty Sue's assistance. He also told one of the inmates that he had planted a bomb in the victim's truck, but the bomb failed to detonate. Franklin owned a shotgun of the type that was used in the murder, and several weeks after the crime he attempted to dispose of the shotgun so that the police would not find it. Finally, he had a strong motive to murder Betty Sue's husband, as he was embroiled in a long-running affair with Betty Sue.
 
 
 16
 In light of the foregoing, we must conclude that the erroneous introduction into evidence of Betty Sue's conviction did not "substantially influence" the jury's verdict. Therefore, the error was harmless and does not require reversal of Franklin's conviction. Because we have concluded that the trial court's error was harmless, we need not consider the final issue raised by Franklin, whether introducing the conviction into evidence violated the Due Process Clause of the Fourteenth Amendment.
 
 III.
 
 17
 The evidence presented at Franklin's trial is sufficient to sustain his convictions for murder and conspiracy to commit murder. Although the trial court erred in permitting the state to introduce evidence that Betty Sue had been convicted of conspiracy to commit murder, this error did not substantially influence the jury's verdict and does not warrant reversal of Franklin's convictions. The district court's denial of Franklin's petition for writ of habeas corpus therefore is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record