


FILED

Jun 05 2024, 9:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Jordon M. Norton,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

June 5, 2024

Court of Appeals Case No.
23A-CR-2336

Appeal from the Elkhart Circuit Court

The Honorable Michael A. Christofeno, Judge

Trial Court Cause No.
20C01-2008-MR-000005

---

**Opinion by Judge Felix**
Chief Judge Altice and Judge Bradford concur.

**Felix, Judge.**

## Statement of the Case

Jordon Norton was drunk at a bar and got into an argument with David Artley. Norton pulled a gun and shot at Artley seven times, killing Artley and injuring a bystander. The State charged Norton with murder, battery with a deadly weapon, and criminal recklessness. A jury found Norton guilty of battery with a deadly weapon and criminal recklessness but failed to reach a verdict on the murder charge. Norton presents two issues on appeal:

1. Whether the trial court committed reversible error in providing a self-defense jury instruction; and
2. Whether the trial court issued an inappropriate sentence under Indiana Appellate Rule 7(B).

We affirm.

## Facts and Procedural History

On the evening of August 22, 2020, Norton and his wife spent "four or five hours" at My Dad's Place Bar in Elkhart, Indiana, where he "drank quite a bit." Tr. Vol. V at 55–56. Although he had been "drinking way too much," Norton and his wife decided to go to Hardy's, another bar nearby. *Id.* at 58. Before they went to Hardy's, the couple stopped at their house where Norton grabbed his handgun. Norton wanted to bring his handgun because he had never been to Hardy's and thought it was "a rougher-style place." *Id.* at 59. Norton did not possess a license for this firearm. Once they got to Hardy's, Norton continued to drink beer.

[4] Artley had also gone to Hardy's that night. Artley was with his wife Stephanie, their two friends Mikel and Tabatha, and his stepson Collin. The group was out celebrating Collin's return from Navy training. During last-call, the group was trying to order drinks at the bar, so Mikel stood next to an empty seat beside Norton. Norton's wife had been using this seat but had left to use the bathroom. Norton believed Mikel was trying to steal his wife's seat, so he began to argue with Mikel.

[5] At first, Mikel, Stephanie, and Tabatha tried to tell Norton that they were just at the bar to order drinks and would leave shortly. Norton responded by telling them that they were being "f***ing disrespectful." Tr. Vol. III at 145. Then, Artley attempted to calm Norton down and reassure him they were not trying to steal his wife's seat, but Norton failed to understand the situation. Eventually, Artley and his group walked away from the bar.

[6] As the group walked away, Norton pulled out his gun and fired two shots at Artley. Artley tried to take the gun away from Norton, but Norton fired a third time which caused Artley to fall to the floor. Then, Norton stood over his body and continued to shoot. Norton fired seven shots in total, killing Artley and hitting a bystander in the foot. Stephanie, Tabatha, and Mikel disarmed Norton, and Norton tried to flee the scene. Norton was prevented from leaving. On August 26, 2020, the State charged Norton with murder,[1] battery

---

[1] Ind. Code § 35-42-1-1(1).

with a deadly weapon as a Level 5 felony,[2] and criminal recklessness as a Level 6 felony[3].

[7]     At trial, Norton alleged that he acted in self-defense as to all three charges. Norton testified that, while he was arguing with Artley at the bar, Artley told him that "we kill snitches." Tr. Vol. V at 74. At the time, Norton had recently given Elkhart County detectives information in relation to a homicide investigation, and he believed that Artley and his friends were going to "beat [him] to death" because he had talked to law enforcement about the homicide. *Id.* at 82. The trial court gave a jury instruction on self-defense, which provided in relevant part:

> A person is justified in using deadly force, and does not have a duty to retreat, only if he reasonably believes that deadly force is necessary to prevent serious bodily injury to himself or a third person or to prevent the commission of a forcible felony.
>
> However, a person may not use force if:
>
> he is committing a crime that is directly and immediately connected to the confrontation. In other words, for the Defendant to lose the right of self-defense, the jury must find that, but for the Defendant's commission of a separate crime, the confrontation resulting in injury to David Artley would not have occured [sic];

---

[2] *Id.* § 35-42-2-1(c)(1), (g)(2).

[3] *Id.* § 35-42-2-2(a), (b)(1)(A).

* * *

> The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.
>
> You are instructed that carrying a handgun without a license or the unlawful possession of a handgun does not deprive a citizen of his right to defend himself or others.

Appellant's App. Vol. III at 9–10.

[8] The jury found Norton guilty of battery with a deadly weapon and criminal recklessness. The jury failed to reach a verdict on the murder charge. The trial court issued a seven-year aggregate sentence to be served in the Indiana Department of Correction.

[9] On May 23, 2023, this court dismissed Norton's first appeal because he failed to seek relief to file a belated appeal under Post Conviction Rule 2. *Norton v. State*, 210 N.E.3d 886, 889 (Ind. Ct. App. 2023). Norton petitioned to file a belated notice of appeal under Post Conviction Rule 2 on September 27, 2023; the trial court granted the petition the following day. Norton now appeals his battery with a deadly weapon and criminal recklessness convictions.[4]

---

[4] The State filed a motion to dismiss this appeal, arguing that Norton did not act with the proper diligence required to grant the Post Conviction Rule 2 petition. We denied the State's motion on April 24, 2024.

# Discussion and Decision

## 1. The Trial Court Did Not Commit Reversible Error When Providing the Jury Instruction on Self-Defense

[10]     Norton argues that the trial court committed reversible error in providing its self-defense instruction to the jury. "Ordinarily, '[i]nstructing the jury is a matter within the discretion of the trial court, and we'll reverse only if there's an abuse of that discretion.'" *Gammons v. State*, 148 N.E.3d 301, 303 (Ind. 2020) (quoting *Cardosi v. State*, 128 N.E.3d 1277, 1284 (Ind. 2019)). However, if the appellant argues that the instruction was an incorrect statement of law, we apply a de novo standard of review. *Id.* (quoting *Batchelor v. State*, 119 N.E.3d 550, 554 (Ind. 2019)). An erroneous jury instruction is presumed to be reversible error "unless the verdict would have been the same under a proper instruction." *Id.* (quoting *Kane v. State*, 976 N.E.2d 1228, 1232 (Ind. 2012)). "[R]eversal is required, in other words, if the jury's decision may have been based upon an erroneous instruction." *Id.* at 303–04 (internal quotation marks omitted) (quoting *Hawkins v. State*, 100 N.E.3d 313, 319 (Ind. Ct. App. 2018)).

[11]     Here, Norton argues the self-defense instruction included a misstatement of law. Norton points to the following portion of the instruction:

> However, a person may not use force if:
>
> he is committing a crime that is directly and immediately connected to the confrontation. In other words, for the Defendant to lose the right of self-defense, the jury must find that, but for the Defendant's commission of a separate crime, the

> confrontation resulting in injury to David Artley would not have occured [sic].

Appellant's App. Vol. III at 9. Norton claims that the phrase "directly and immediately connected to the confrontation" was an incorrect statement of law that influenced the jury's verdict.

[12] Our Supreme Court addressed a similar challenge to a self-defense instruction in *Gammons v. State*. 148 N.E.3d at 304–05. Specifically, it determined that the phrase "directly and immediately connected" in the self-defense instruction "weakened the causal connection required to preclude a claim of self-defense." *Id.* at 304. The court determined that this but-for test barring a self-defense claim was "too broad." *Id.* (quoting *Mayes v. State*, 744 N.E.2d 390, 396 (Ind. 2001)). The *Gammons* court rejected the but-for test and held that "self-defense is barred only when there is 'an immediate causal connection between the crime and the confrontation.'" *Id.* at 304–05 (quoting *Mayes*, 744 N.E.2d at 394). Since the trial court used the broad but-for test, it misstated the law in administering the self-defense instruction. *See id.*

[13] Although the self-defense instruction misstates the law, we still must determine if the error was the basis for the jury's decision to convict. *See Gammons*, 148 N.E.3d at 305. Norton claims that the erroneous instruction permitted the jury to disregard Norton's self-defense claim because he was committing the crime of unlawful possession of a handgun. However, the instruction expressly told the jury they were not permitted to discredit a self-defense claim on this basis: "You are instructed that carrying a handgun without a license or the unlawful

possession of a handgun does not deprive a citizen of his right to defend himself or others." Appellant's App. Vol. III at 10. Additionally, Norton fired multiple shots at Artley after he fell to the ground. Firing multiple shots undercuts a self-defense claim. *See Mayes v.* 744 N.E.2d at 395. Thus, we are unpersuaded that the jury reached its verdict based on the erroneous instruction, and we conclude that the trial court did not commit reversible error. *See Gammons*, 148 N.E.3d at 304–05.

## 2. Norton's Sentence is Not Inappropriate Under Indiana Appellate Rule 7(B).

Next, Norton contends that his sentence is inappropriate under Appellate Rule 7(B) and should be revised. We disagree. The Indiana Constitution authorizes us to independently review and revise a trial court's sentencing decision. *Lane v. State,* No. 24S-CR-150, 2024 WL 1924947, at *2 (Ind. 2024) (citing Ind. Const. art. 7, § 4). That authority is implemented through Appellate Rule 7(B), which permits us to revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is "inappropriate in light of the nature of the offense and the character of the offender." *Id.* (quoting Ind. Appellate Rule 7(B)). We apply a "holistic approach" to our 7(B) review, meaning we "'must *consider*' both factors, but the defendant need not 'necessarily *prove*' that the sentence is inappropriate on both counts." *Id.* at *6 (quoting *Connor v. State*, 58 N.E.3d 215, 219 (Ind. Ct. App. 2016) (emphasis in original).

Our role under Appellate Rule 7(B) is to "leaven the outliers," *Lane,* No. 24S-CR-150, 2024 WL 1924947, at *2 (quoting *Cardwell v. State*, 895 N.E.2d 1219,

1225 (Ind. 2008)), and we reserve that authority for "exceptional cases," *Mullins v. State*, 148 N.E.3d 986, 987 (Ind. 2020) (quoting *Faith v. State*, 131 N.E.3d 158, 160 (Ind. 2019)). When gauging inappropriateness under Appellate Rule 7(B), we "focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Brown v. State*, 10 N.E.3d 1, 8 (Ind. 2014) (citing *Cardwell*, 895 N.E.2d at 1225). Generally, a trial court's sentencing decision prevails unless it is "'overcome by compelling evidence portraying in a positive light the nature of the offense' and 'the defendant's character.'" *Lane*, No. 24S-CR-150, 2024 WL 1924947, at *2 (quoting *Oberhansley v. State*, 208 N.E.3d 1261, 1267 (Ind. 2023)). In conducting this analysis, "we are not limited to the mitigators and aggravators found by the trial court." *Brown*, 10 N.E.3d at 4.

[16] When considering the nature of the offense, we start with the advisory sentence. *Brown*, 10 N.E.3d at 4 (citing *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007)). Here, Norton was convicted of battery with a deadly weapon as a Level 5 felony and criminal recklessness as a Level 6 felony. A Level 5 felony conviction carries a sentence between two and eight years with an advisory sentence of four years, I.C. § 35-50-2-6(b), and a Level 6 felony carries a sentence between six months and three years with an advisory sentence of one year, *id.* § 35-50-2-7(b). The trial court imposed a seven-year aggregate sentence to be served in the DOC.

[17] Where, as here, the trial court deviated from the advisory sentence, one factor we consider is "whether there is anything more or less egregious about the

offense committed by the defendant that makes it different from the 'typical' offense accounted for by the legislature when it set the advisory sentence." *T.A.D.W. v. State*, 51 N.E.3d 1205, 1211 (Ind. Ct. App. 2016) (quoting *Holloway v. State*, 950 N.E.2d 803, 806–07 (Ind. Ct. App. 2011)), as amended (May 26, 2023). We also consider whether the offense was "accompanied by restraint, regard, and lack of brutality." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[18] Norton's crime was particularly egregious. On the night of the shooting, Norton had been drinking for hours when he decided to grab his gun before driving drunk to Hardy's. Once he got to Hardy's, he continued to drink and later started an argument with a group that was trying to order drinks at the bar. Norton contends that his decision to shoot was "made in a flash" because he felt threatened. Appellant's Br. at 19. However, he shot Artley after the group had walked away from the situation in an attempt to avoid further confrontation. Further, Norton continued to shoot Artley after he went to the ground. Thus, Norton did not show any self-control or restraint while committing his offenses.

[19] In considering the character of the offender, "we engage in a broad consideration of a defendant's qualities," *T.A.D.W.*, 51 N.E.3d at 1211 (citing *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*), including whether the defendant has "substantial virtuous traits or persistent examples of good character," *Stephenson*, 29 N.E.3d at 122. Norton has a long history of criminal conduct. We note that, at the time of Norton's

present offenses, he was on probation for two state felony convictions and on supervised release for a pending federal felony offense. Starting at the age of 11, Norton had multiple juvenile adjudications. As an adult, Norton has multiple felony convictions, including state felony convictions for possession of methamphetamine and pointing a firearm as well as a federal felony conviction for receipt of one or more firearms while under felony indictment. Thus, Norton has not demonstrated he has positive traits or good character that warrant a revised sentence.

[20] Based on Norton's offense and his persistent criminal conduct, we cannot say that he has produced compelling evidence demonstrating that the nature of his offense or his character renders sentence inappropriate. *See Hayko v. State*, 211 N.E.3d 483, 487 n.1 (Ind. 2023), *reh'g denied* (Aug. 18, 2023).

## Conclusion

[21] The trial court did not commit reversible error in administering its self-defense jury instruction and did not issue an inappropriate sentence.

[22] Affirmed.

Altice, C.J., and Bradford, J., concur.

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Tyler G. Banks
Supervising Deputy Attorney General
Indianapolis, Indiana